**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ricardo RUIZ and Tyrone Michael
Crawford, Defendants–
Appellants.**

No. 92–8033.

United States Court of Appeals,
Fifth Circuit.

March 15, 1993.

John H. Whitaker, El Paso, TX, for Ruiz.

Henry J. Bemporad, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, and Robert J. Perez, Asst. Federal Public Defender, San Antonio, TX, for Crawford.

LeRoy Morgan Jahn, Richard L. Durbin, Jr., Joan E.T. Stearns, Asst. U.S. Attys., and Ronald F. Ederer, U.S. Atty., San Antonio, TX, for the U.S.

Before WISDOM, JOLLY, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

### I. *Facts and Procedural History*

On August 25, 1991, Ricardo Ruiz and Tyrone Michael Crawford went in Ruiz's truck to the Military Clothing Sales Store at Fort Bliss in El Paso, Texas. After arriving at the store, Ruiz waited with the truck engine running, while Crawford, who had a gun in his pocket, went to the back door of the store.

After hearing Crawford at the back door, the shift supervisor at the store, Martha Garner, opened the door thinking Crawford was an employee's spouse. Crawford then attempted to force his way inside the store, and Garner believing that Crawford was going to harm her, struggled to escape. Crawford grabbed her arm and tried to drag her back into the store, however, he did not display a gun nor did he tell Garner that he had a gun.

Garner eventually pulled away from Crawford and ran to a Military Police guard shack located 30–40 yards from the store, and told the guards to stop the truck. In the meantime, Crawford jumped back into the truck and Ruiz sped out of the parking lot. While still on the fort, Crawford threw away the gun, and got out of the truck and started walking. After Crawford got out, a guard stopped Ruiz's truck whereon Ruiz told the guard that Crawford had thrown the gun from the truck. The gun, fully loaded, was found about two blocks from where Ruiz told the guard Crawford had tossed it. The gun was later proved to be inoperable because its firing pin had been filed down; but, it was, however, functional in every other respect.

Ruiz agreed to talk to the guards and did not request a lawyer. He drove around the fort with the guards and identified Crawford as he was attempting to leave the fort. At the MP station, Special Agent Steven Malkiewitcz of the FBI interviewed Ruiz, who first denied that he knew about the robbery, but later admitted to having helped plan the robbery and to having known prior to the attempted robbery that Crawford would have a gun with him.

Crawford waived his right to a lawyer. He first gave Malkiewitcz a false name and said that Ruiz had not known about the robbery. He later admitted his true identity, that he had attempted to rob the store, that Ruiz knew about the robbery, and that Ruiz knew Crawford would be carrying a

gun. Crawford told Malkiewitcz that he took the gun to threaten the employees of the store, and had loaded it in case someone in the store started firing at him.

Ruiz and Crawford were charged in a three-count indictment that stated: (1) Ruiz and Crawford assaulted a person having charge of money and other property of the United States with the intent to rob, and in so doing put the life of the victim in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. § 2114 (count one); (2) Ruiz and Crawford used and carried a firearm during and in relation to a crime of violence, i.e., the assault with intent to rob described in count one, in violation of 18 U.S.C. § 924(c)(1) (count two); and (3) Crawford, as a convicted felon, possessed a firearm which had been shipped in interstate commerce, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (count three). After a trial, a jury by general verdicts found Crawford "guilty" on all three counts. It found Ruiz "not guilty" on count one, but found him "guilty" on count two. The district court sentenced Ruiz to a five-year term of imprisonment and a three-year term of supervised release, and ordered him to pay a $1,000 fine and a $50 special assessment. The court sentenced Crawford to 63-month terms of imprisonment on counts one and three and to a 60 month term of imprisonment on count two, ordered the terms for counts one and three to be served concurrently, and the term for count two to be served consecutively to the term for counts one and three. It also ordered Crawford to serve three years of supervised release, pay a $50.00 special assessment on each count, and pay $982.77 in restitution to Garner. Ruiz and Crawford appeal.

## II. *Analysis*

### A. *18 U.S.C. § 2114*

In his first issue, Crawford contends that the evidence was insufficient as a matter of law to support his conviction under 18 U.S.C. § 2114. Crawford contends that the jury could not have found that he put Garner's life in jeopardy by the use of a dangerous weapon in that there was no evidence that he "used" the gun when he attempted to enter and rob the Military Store. It is undisputed that Crawford never displayed the gun and Garner, his victim, never knew of its existence.

The burden of proof is on the government to prove each element of the offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In determining whether this burden has been met, the evidence and all reasonable inferences that may be drawn from the evidence must be viewed in the light most favorable to the government. *United States v. Prieto-Tejas,* 779 F.2d 1098, 1101 (5th Cir.1986). When reviewing the evidence to determine whether it is sufficient, this Court decides whether a "rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Juarez-Fierro,* 935 F.2d 672, 677 (5th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991).[1]

The district court (USDC) instructed the jury that "for the weapon to have been used, it must be proved that the defendant not only possessed the weapon, but that he intentionally displayed it in some manner." Crawford contends because he never displayed the gun, and, indeed, the government concedes he did not, there is insufficient evidence that he "used" the gun, and therefore the facts in the present case are insufficient as a matter of law to support his conviction. Crawford points out that he never removed the gun from his pocket, and Garner had no idea that Crawford had

1. This court has held that "a gun used in connection with and at the scene of a bank robbery is as a matter of law a dangerous weapon and that those on the immediate scene of the robbery are placed in an objective state of danger." *United States v. Parker,* 542 F.2d 932, 934 (5th Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977) (quoting *Baker v. United States,* 412 F.2d 1069, 1072 (5th Cir. 1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970)). Crawford does not argue that legal test and he concedes that the jury could reasonably have found that the gun was a dangerous weapon and that the victim was placed in an objective state of danger.

a gun as he neither referred to the gun nor otherwise implied that he possessed a gun. The only other person who knew that Crawford possessed the gun was Ruiz. After the attempted robbery, Crawford threw the gun away before being arrested.

■ This Court has not yet decided whether a dangerous weapon is "used" within the meaning of Section 2114 if a defendant possessed a weapon when he committed a crime, but never displayed or mentioned the weapon. The Seventh Circuit, however, recently affirmed a defendant's conviction under Section 2114 when a gun was present at a robbery, but was not taken out of the defendant's pocket until after the robbery had been completed. *United States v. Rodriquez*, 925 F.2d 1049, 1051–53 (7th Cir.1991). The court reasoned that "the ready availability of the gun likely emboldened ... [the defendants] even if, at first, the gun was not drawn." *Id.* at 1052–53. Likewise, in an analogous statute—18 U.S.C. § 924 [2]—this court has liberally interpreted the "use" provision. Section 924 provides for enhancement when the defendant "uses or carries" a firearm. In *United States v. Coburn*, 876 F.2d 372 (5th Cir.1989), this court held that a defendant "uses" a firearm under Section 924, if the firearm had the effect of "emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred...." *Id.* (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir. 1985)). This court stated "the government need not prove an actual use or brandishing of the weapon" for possession of the weapon to constitute the proscribed "use." *Id.* In *United States v. Contreras*, 950 F.2d 232 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992), this court held that the "govern-

ment does not have to show ... a defendant actually used or brandished the firearm to prove 'use' within the meaning of Section 924(c)."

■ Therefore, while we find Crawford's contention that he did not "use" the gun initially appealing, ultimately we reject it in favor of the reasoning espoused by the Seventh Circuit in *Rodriquez* and this court in *Coburn* and *Contreras* and hold a defendant need not display a gun to be convicted of "using" a dangerous weapon under Section 2114. We so hold because it would be inconsistent to interpret "use" one way in Section 2114 and another way in Section 924. Having so held, there was sufficient evidence showing that the ready availability of the gun emboldened Crawford in that by his own admission, he took the gun to the store to threaten the store's employees, and loaded it in case someone started firing at him. Emboldened by the gun, Crawford "used" a dangerous weapon within the meaning of Section 2114 and, by so using, placed Garner's life in danger.

■ However, the USDC instructed the jury that defendants could only be convicted under Count one (the Section 2114 charge) if "he intentionally displayed ... [the gun] in some manner." The government objected to this instruction which had been requested by defense counsel. We are faced therefore with a unique situation in which the court's instruction was not raised by the evidence, and for the reasons discussed in the preceding paragraph, was not legally correct; but the jury proceeded to find Crawford guilty under this count in spite of the instruction. Under these circumstances, we conclude that the proper result is to reverse Crawford's conviction on Count one on the narrow ground that the evidence was insufficient to support the jury's verdict under the instruction as issued by the USDC.

**2.** 18 U.S.C. § 924(c)(1) provides:
Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the

United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking

B. *18 U.S.C. § 924(c)(1) and 18 U.S.C. § 922(g)(1)* [3]

Crawford was convicted of using or carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1), and possessing a firearm as a convicted felon that had been shipped in interstate commerce under 18 U.S.C. § 922(g)(1). Crawford contends that the evidence was insufficient for the jury to have convicted him of those offense in that the gun was not a firearm within the meaning of 18 U.S.C. § 921(a)(3). Section 921(a)(3) defines firearm for purposes of Section 924(c)(1) and Section 922(g)(1) as: "any weapon ... which ... is designed to ... to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3).

While Crawford concedes that the gun was designed to expel a projectile when it was manufactured in 1901, he contends that the gun was not designed to expel a projectile at the time it was possessed by Crawford. When the gun's hammer was filed down, he contends, its design was permanently changed so as to make it inoperable, and thus there was insufficient evidence for the jury to find that the gun was designed to expel a projectile.

■ We disagree, because in our view the filing down of the gun's hammer did not change the fact that the gun was designed to expel a projectile, but rather it merely temporarily altered the gun's capability to accomplish the purpose for which it was designed. In sum, Crawford used a weapon that was designed to expel a projectile and the substance of that design had not been changed to effect another purpose. Except for the filed-down firing pin, the revolver was functional in every other respect. Moreover, Alcohol, Tobacco, and Firearm's Agent Robert Champion, a government witness, testified that the gun was a weapon that was designed to expel a projectile and that it could be converted to be made operable.

In *United States v. York*, 830 F.2d 885 (8th Cir.1987), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988), the defendant claimed that there was insufficient evidence to support his conviction under Section 924(c)(1), in that the gun in issue was inoperable—it had no firing pin, and the cylinder did not line up properly with the gun barrel. The court affirmed the conviction, holding that Section 921(a)(3) did not require a gun to be operable so long as it was designed to expel a projectile. *Id.* at 891. In the present case, the evidence, viewed in the light most favorable to the government and with all reasonable inferences drawn in support of the jury's verdict, was more than sufficient to support a finding that the inoperable gun was designed to expel a projectile, and therefore was a firearm.

Ruiz was convicted on count two only—Section 924(c)(1). On appeal, he contends that the evidence is insufficient to support a finding of guilt in that the evidence at trial showed that he never made any preparations for the robbery and that he never agreed to join with Crawford to rob the store. Ruiz contends that he did not know Crawford had the gun until moments before the attempted robbery, and therefore he had neither actual nor constructive possession of the gun, and accordingly he did not knowingly "carry" the gun. The evidence shows, and the parties agree, Crawford, not Ruiz, was the one who possessed the revolver.

■ We reject Crawford's contention. In *United States v. Pineda–Ortuno*, 952 F.2d 98 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992), this court held that the evidence was sufficient to meet the "carrying" requirement of Section 924(c), when the defendant operated a car and knew a firearm was in the car. This court stated "[w]hen a vehicle is used, 'carrying' takes on a different meaning from carrying on the person because the means of carrying is the vehicle itself." In his statement at the fort, Ruiz said that Crawford had told him about the gun when Ruiz picked him up at

---

crime, be sentenced to imprisonment for five years....

**3.** Ruiz adopts Crawford's argument on this issue as it relates to his conviction under Section 924(c)(1).

Crawford's home. Crawford also stated that Ruiz knew about the gun. The jury was entitled to believe Crawford and the earlier statements of Ruiz, and it was entitled to reject Ruiz's assertion at trial that he was coerced into making the statement at the fort regarding his knowledge of the gun. Therefore, there was sufficient evidence for the jury to find that Ruiz was a willing participant in the robbery and was guilty of "carrying" the gun during and in relation to a crime of violence. *United States v. Pineda–Ortuno*, 952 F.2d 98, 103–04 (5th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992).

■ Ruiz also contends that a conviction under 18 U.S.C. § 924(c)(1) can not stand when there is no conviction for an underlying predicate felony—he was acquitted of violating 18 U.S.C. § 2114. Specifically, his conviction under 18 U.S.C. § 924(c)(1), Ruiz contends requires that he first be convicted under 18 U.S.C. § 2114. Having been acquitted on that underlying count[4], Ruiz contends we must reverse his conviction under 18 U.S.C. § 924(c)(1).

This Court in *United States v. Munoz–Fabela*, 896 F.2d 908, 911 (5th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 76, 112 L.Ed.2d 49 (1990), rejected Ruiz's contention. This court stated "it is only the fact of the offense, and not a conviction, that is needed to establish the required predicate." Because there is more than ample evidence showing that a reasonable jury could have found Ruiz guilty of violating Section 2114, the fact that Ruiz was acquitted on that count does not preclude his conviction under Section 924(c)(1).

■ Finally, Ruiz contends that his conviction must be reversed because the indictment stated he knowingly carried and used the weapon.[5] Since the statute is worded in the disjunctive, however, proof beyond a reasonable doubt that Ruiz knowingly car-

ried the weapon without evidence that he knowingly used it, is sufficient even though the indictment is worded in the conjunctive. *United States v. Atkins*, 698 F.2d 711, 715 (5th Cir.1983).

### III. *Conclusion*

For the foregoing reasons, we AFFIRM Ruiz's conviction as to 18 U.S.C. § 924(c)(1). We AFFIRM Crawford's convictions as to 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 922(g), but we REVERSE his conviction as to 18 U.S.C. § 2114. We do not remand this case for resentencing, however, because the reversal of Crawford's conviction as to 18 U.S.C. § 2114 does not affect his total effective sentence.

E. GRADY JOLLY, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from part II.A. of the majority's opinion.[1]

The majority concludes that Crawford's conviction under 18 U.S.C. § 2114 should be reversed—based on an instruction that Crawford requested and does not appeal—despite the fact that (1) Crawford admitted carrying the gun with him to commit the robbery for the purpose of threatening the employees; (2) the jury made a factual determination that Crawford possessed the gun while committing the robbery; and (3) possession of the gun satisfies the "use" requirement of § 2114 even if the victim does not know of the gun's existence. I dissent from this nonsensical result.

Even if Crawford were challenging the very instruction he requested, we would review the instruction under the plain error standard because he did not object to it at trial. "Plain errors are those which strike at the fundamental fairness, honesty, or public reputation of the trial." *United States v. Bentley*, 875 F.2d 1114, 1119 (5th Cir.1989). The instruction clearly is not plain error. The government presented

---

**4.** 18 U.S.C. § 2114.

**5.** The indictment stated Ruiz "knowingly used and carried a firearm," while the statute only requires that the defendant "uses or carries a firearm."

**1.** I dissent only from the majority's reversal of Crawford's conviction under § 2114. I agree with the majority that a weapon does not have to be displayed for it to have been "used" within the meaning of § 2114.

sufficient evidence to support the jury's determination that Crawford possessed the gun when he attempted to commit the robbery. This was all that was necessary for Crawford's conviction under § 2114; this court does "not reverse for an alleged error in the jury instructions if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case." *Bass v. United States Depart. of Agriculture,* 737 F.2d 1408, 1414 (5th Cir.1984). Furthermore, any error in the jury instruction was harmless and no injustice resulted from the district court's instruction as given. The relevant factual issue—whether Crawford was carrying a weapon when he attempted to commit the robbery—was decided by the jury.[2] Thus Crawford has not been deprived of his right to a jury determination of the factual issue necessary for his conviction. *See United States v. L'Hoste,* 609 F.2d 796 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).

Finally, we note that—unsurprisingly—the majority cites no authority for its anomalous result.

The evidence was sufficient to support Crawford's conviction under § 2114. This determination is all we need to make. For this reason, I respectfully dissent from the majority's reversal.

---

**2.** The district court instructed the jury that "for the weapon to have been *used,* it must be proved that the defendant *not only* possessed the weapon, but that he intentionally *displayed* it in some manner." (Emphasis added.) This instruction obviously consisted of two parts: (1) whether Crawford possessed the weapon and (2) whether Crawford displayed the weapon. The jury made a factual finding that Crawford possessed the weapon, and this finding is supported by the evidence. Because this was the only question that had to be answered in the affirmative to sustain a conviction under § 2114, the relevant factual issue has been decided by the jury.